## KENT v. STATE.

### Opinion delivered April 19, 1920.

1. EMBEZZLEMENT—SUFFICIENCY OF INDICTMENT.—An indictment for
   embezzlement which charges that defendant "embezzled" prop-
   erty of his principal is sufficient without alleging that he did so
   "with intent to embezzle or convert to his own use," under Kirby's
   Digest, § 1837, as the word "embezzle" conveys the idea of such
   intent.

2. EMBEZZLEMENT—INTENT TO CONVERT.—A fraudulent intent to
   convert the property of another is an essential element of the
   crime of embezzlement.

3. PARTNERSHIP — SHARING IN PROFITS.—Where one person contrib-
   utes his money and another his services as capital in a joint en-
   terprise, both to share in the profits and losses, a partnership is
   created; but where one furnishes the capital and pays all the
   expenses, agreeing to pay the other as compensation for his serv-
   ices one-half the net profits, the relationship of master and serv-
   ant is created.

4. EMBEZZLEMENT—VARIANCE BETWEEN ALLEGATION AND PROOF.—
   Between an indictment charging the embezzlement of money and
   proof of wrongfully depositing money of the prosecuting witness
   in a bank to defendant's credit and subsequently withdrawing it
   therefrom, there is no variance.

Appeal from Little River Circuit Court; *James S. Steel,* Judge; affirmed.

*Shaver & Locke,* for appellant.

1. The indictment is not sufficient; it is fatally defective, because it omits the words "with intent to embezzle or convert to his own use." Kirby's Digest, §§ 1830, 1837; 58 Ark. 98, 105; 111 *Id.* 180, 186; 118 *Id.* 44.

2. Jones and Keith were partners as a matter of law. 74 Ark. 437; 145 U. S. 61; 63 Ark. 518.

3. There is a fatal variance between the indictment and the proof. 111 Ark. 186; 71 *Id.* 418.

4. The court erred in admitting testimony as to certain checks as the indictment does not charge embezzlement of checks nor the conversion of checks into money. 117 Ark. 108.

5. The remarks of the court as to certain checks were prejudicial.

6. The court erred in giving and refusing instructions. 117 Ark. 108; 85 *Id.* 500.

*John D. Arbuckle,* Attorney General, and *J. B. Webster,* Assistant, for appellee.

1. The indictment was sufficient as it follows the language of the statute. 111 Ark. 180; Kirby's Digest, §§ 1837, 1830.

2. The court properly submitted the question whether Jones and Keith were partners to the jury on proper instructions. 74 Ark. 442.

3. There was no variance between the indictment and proof. The testimony shows defendant received *cash,* and whether gold, silver or currency does not matter.

4. There was no error in the instructions, but, if so, the objections were general, and defendant did not ask for proper ones. 129 Ark. 182; 114 *Id.* 409.

WOOD, J. Appellant appeals from a judgment convicting him of embezzlement.

The indictment, omitting the caption and conclusion, is as follows: "The said J. T. Kent, in the county and

State aforesaid, on the 5th day of October, 1919, being then and there over the age of 16 years, being the agent of W. A. Jones, and having then and there in his hands and possession as the agent of the said W. A. Jones, as aforesaid, three hundred and seventy dollars in gold, silver and paper money of the value of $370, the property of the said W. A. Jones, as aforesaid, did unlawfully, fraudulently and feloniously make away with, embezzle and convert to his own use the said sum of $370, without the consent of the said W. A. Jones.''

Section 1837 of Kirby's Digest, among other things, provides: ''If any * * * agent * * * of any private person * * * or any person employed in any such capacity, shall embezzle or convert to his own use, or shall take, make way with, or secrete with intent to embezzle or convert to his own use, without the consent of his master or employer, any money, * * * whatsoever belonging to any other person which shall have come into his possession, or under his care or custody, by virtue of such * * * agency * * * he shall be deemed guilty of larceny and on conviction shall be punished as in case of larceny.''

The appellant contends that the indictment is fatally defective because it omits the words, ''with intent to embezzle or convert to his own use.''

The indictment was framed under the above statute. It follows substantially its language and sets forth the essential particulars which constitute the offense of embezzlement as therein defined.

In criminal jurisprudence the words ''embezzle'' and ''embezzlement'' have a well understood meaning. The property or thing which may be the subject-matter of embezzlement as well as the classes of fiduciary persons that may commit the offense and the penalty attached thereto may be varied according to the statutes of the different States. Nevertheless, there is no difference of opinion as to what the word ''embezzlement'' or the act of embezzlement means.

Mr. Bishop says, "The act of embezzlement consists of a fraudulent appropriation by one of another's goods to his own use, or at least to depriving the true owner of them. * * * Embezzlement is the fraudulent misappropriation, by a servant or other person within the terms of the statute of embezzlement, of such property as the statute makes the subject of it, under the circumstances designated therein, to the use of the embezzler, or otherwise to the injury of the owner thereof.' 2 Bishop's New Criminal Law, sec. 325; 2 Wharton's Criminal Law, sec. 1256, p. 1467; 1 McClain's Criminal Law, sec. 622.

After setting up the beneficiary relationship and alleging that by virtue thereof the appellant had in his possession funds which were the property of his principal and that such funds were fraudulently and feloniously made way with, embezzled, and converted to his own use by the appellant, it is wholly unnecessary to use the words "with intent to embezzle or convert to his own use." Such addition would have been but another example of that inexcusable tautology so frequently found in legal documents, pleadings, and statutes. The statute, itself, is tautological in the use of words which mean the same thing. The indictment is not to be condemned because it eliminates some of the words which are synonymous. The indictment in clear and unmistakable language sets forth all the particulars necessary to charge the statutory crime of embezzlement. *Fleener* v. *State,* 58 Ark. 98-105; *Farrell* v. *State,* 111 Ark. 180. See, also, *Gardner* v. *State,* 130 Ark. 252-7.

While it is undoubtedly essential to the crime of embezzlement that there be a fraudulent intent on the part of the fiduciary to convert the property of another to his own use (*Fleener* v. *State, supra*), yet that charge is unquestionably made in the use of the word "embezzle" to say nothing of the other words employed. The case is readily distinguished in this respect from the case of *State* v. *Bills,* 118 Ark. 44. For in that case the indictment charged that Bills did unlawfully, feloniously, and knowingly receive into and have in his possession prop-

erty which he knew at the time of receiving same had been stolen. The indictment did not charge that he received them with "intent to deprive the true owner thereof." We held that these words were an essential part of the statutory offense. No other words used in the indictment would convey the meaning intended by the use of the words above quoted.

But such is not the case here. The word "embezzle," as we have shown, conveys the meaning that the offender in the act of converting or making way with another's property did so with the intent of converting it to his own use.

The appellant contends that the undisputed evidence shows that Jones and the appellant were partners in the funds alleged to have been embezzled, and the court so instructed the jury as a matter of law. The only testimony on this issue as abstracted by the appellant is as follows: "The kind of contract I had with Mr. Kent was that I would buy and pay for the mules and he would handle the mules, sell them, swap them, and what net profit was made when we would get our expenses, the feed, and expense of getting the mules back we were to get half of it. We split the net profits. This car of mules was not under a special contract. We handled them like we handled the rest. I would first charge the mules at what they cost, and then keep a record of the feed and a record of the income, and when I got back the money that I was out, if we had $500 left, I would give half to Kent and I would take half. Kent's expenses were charged to expense, and it came out of the expense account. He was entitled to one-half of the profits. He was to get that undivided one-half of the profits for putting in his time and labor and buying up these mules, taking charge of them and peddling them out."

If it was the understanding between Jones and appellant that Jones was to contribute his money and appellant his services as capital in a joint enterprise where both were to share in the profits and losses, then this contract would constitute a partnership. But, on the con-

trary, if the contract was that Jones should furnish the capital and pay all the expenses and appellant was employed to work for Jones with the understanding that he was to receive as compensation for his services one-half the net profits, having no community interest, then appellant would be an employee for hire and not a partner. *Rector* v. *Robins,* 74 Ark. 437-42.

It occurs to us that the undisputed testimony of Jones shows that the relationship between him and appellant with reference to the business and the funds derived therefrom was not that of partnership, but that appellant was an employee of Jones and was to receive compensation for his services out of the net profits of the business, provided there were any net profits. The court might have so told the jury as a matter of law. Such being the case, the court did not err to the prejudice of appellant in submitting to the jury the issue as to whether there was a partnership.

The appellant next urges that there was a fatal variance between the allegations of the indictment and the proof in this, that the indictment, if valid, charged appellant with the embezzlement of $370 in gold, silver, and paper money, whereas, the proof failed to show that appellant had in his possession any gold, silver, or paper money, the property of Jones.

Jones testified in substance that he purchased a car load of mules; that appellant was his agent to sell the mules; that he instructed appellant to deposit the money he obtained from the sale of the mules with the Citizens' Bank of Foreman, Arkansas. He later discovered that some of the mules had been sold, but that no money had been deposited in the bank in witness' name. Witness ascertained that appellant had received from the sale of the mules somewhere between $370 and $425. The money belonged to witness. Appellant had never accounted to witness for it. The appellant told witness that he had taken in some money and had put it in the bank.

Another witness testified that he traded to appellant a mare for a pair of the mules and gave a check payable

to the order of appellant, in the sum of $325, representing the difference in the purchase price between the mare and the mules.

The testimony of other witnesses shows that they had paid appellant certain small sums, but their testimony does not disclose whether appellant received checks for these sums or the money.

An employee of the Bank of Foreman testified that appellant deposited in that bank between $300 and $400. The money was deposited in appellant's name. Witness then testified that he filled a check out as follows: "Pay to the order of—Cash—$340.70," which was signed by J. T. Kent. Witness then stated that he "paid Kent the cash at the window."

Under the above testimony there was no variance between the allegations of the indictment and the proof. The jury were warranted in finding from the above testimony that the money on deposit in the Bank of Foreman in the name of appellant was really the money of Jones; that the bank paid to appellant this money, the sum of $340.70, not by check, but by cash.

Now the word "cash" in commercial transactions, according to Funk & Wagnall's Dictionary, means: "Current money in hand or readily available; money paid down." Webster defines it as "a money; ready money." He gives as synonyms "coin," "currency."

"From early times," says Funk & Wagnalls, "commercial nations have used gold and silver * * * as either customary or legalized money." "Money is a standard of value and medium of payment established by law; legal tender." Funk & Wagnall's Dictionary. "The money of the United States includes gold, silver and paper currency." Webster's Dictionary.

The testimony, therefore, tended to sustain the allegation of the indictment that appellant "did embezzle and convert to his own use" the "gold, silver and paper money" of the appellee.

Other errors in the rulings of the court are urged for reversal, but we do not deem them of sufficient impor-

tance to discuss. There is no prejudicial error in the record, and the judgment is, therefore, affirmed.