### SPEARS *v.* STATE.

#### Opinion delivered May 9, 1927.

1. INDICTMENT AND INFORMATION—DUPLICITY.—An indictment charging defendant with fraudulently entering on his employer's time-book the names of four persons not in the company's employ does not charge four separate offenses, but the commission of the crime of false pretense through each of the parties.

2. FALSE PRETENSES—DESIGNATION OF PARTY INJURED.—The use of the hyphen in place of the "&" in employer's name in the indict-

ment of a foreman for false pretenses, by designating the party defrauded as the "Wisconsin-Arkansas Lumber Company," instead of the "Wisconsin & Arkansas Lumber Company," *held* not a fatal defect, under Crawford & Moses' Dig., § 3014, providing that no indictment is insufficient for a defect not affecting the substantial rights.

3. FALSE PRETENSES—ERROR IN DESIGNATION OF PARTY DEFRAUDED.— Omission of the word "Arkansas" from Wisconsin-Arkansas Lumber Company in one of several designations of the party defrauded, in an indictment of a foreman for false pretenses *held* immaterial, under Crawford & Moses' Dig., § 3014, providing that no indictment is insufficient for error not affecting substantial rights.

4. FALSE PRETENSES—SUFFICIENCY OF EVIDENCE.—Evidence in a prosecution for false pretenses *held* sufficient to take the case to the jury.

5. CRIMINAL LAW—JURY QUESTION.—Where there is any substantial evidence tending to show guilt of the accused, it is a question for the jury, and not for the court, to determine the matter of his guilt.

6. FALSE PRETENSES—DESCRIPTION OF MONEY.—On an indictment of a servant for false pretenses charging that he caused his employer to pay to him $300 "lawful money of the United States," it was unnecessary to prove whether the money was gold, silver or paper.

7. CRIMINAL LAW—EVIDENCE OF FRAUD.—On an indictment of a foreman for false pretenses in entering on the timebook names of four persons who were not employees, testimony of one not named in the indictment, that he had worked for accused, but had received his pay from accused's employer, tending to prove a general scheme to defraud, *held* admissible.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*D. D. Glover,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

McHANEY, J. Appellant was indicted, tried, convicted, and sentenced to one year in the penitentiary on a charge of false pretenses, and from the judgment against him he has appealed to this court.

He has urged for our consideration four errors of the trial court, which are properly set up in the motion

for a new trial, which was overruled. The first is that the court erred in overruling his demurrer to the indictment. The first ground of demurrer is that the indictment charged four separate specific offenses, in that it charged that he, as foreman of the Wisconsin-Arkansas Lumber Company, fraudulently entered on his timebook that "Joe Morgan, Sam Wiggins, Robert Haymon and Rufus Williams were in the employ of said Wisconsin-Arkansas Lumber Company, and were entitled to their pay from said company, when in truth and in fact" they were not in the employ of the said company, and not entitled to be paid by it. This assignment of error is not well taken, for the reason that it does not charge four separate offenses, but charges the commission of the crime of false pretense through each of these parties. A conviction could have been had by proof of the offense through either one or all of said parties, but there could have been only one conviction, even though there had been sufficient proof to establish guilt as to each. Separate indictments might have been had as to each, but the pleader chose to put them in one case, and appellant cannot complain.

The next ground of demurrer was that the indictment alleged the name of the company to be the Wisconsin-Arkansas Lumber Company, whereas the true name of said company is the Wisconsin & Arkansas Lumber Company. While this is true, it was simply an error that could not in any way have prejudiced appellant's rights. He had for many years been in the employ of the Wisconsin & Arkansas Lumber Company, and knew what company he was charged with defrauding. Section 3014 of C. & M. Digest provides: "No indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merits." The indictment several times uses the name of the company as above stated, and concludes by the statement that the false pretenses were made

"with the unlawful and felonious intent to then and there cheat and defraud the Wisconsin-Lumber Company," leaving out the word "Arkansas" as it had theretofore been used in the indictment. It is manifest that the omission of the word "Arkansas" after the hyphen was a mere clerical error, and that the failure of the scrivener to put it in the indictment could not possibly work to the prejudice of appellant's rights. In *Hyde & Smith* v. *State,* 168 Ark. 580, 271 S. W. 330, on an indictment for robbery, the indictment left out the word "did" in the clause alleging that, "by force and intimidation, did take from the person of Sam Blevins," etc. The word "did" as above used was omitted and assigned as error. This court said:

"The omission of words in an indictment which would not mislead the accused as to the nature and character of the charge will not vitiate an indictment, as such omissions do not prejudice his substantial rights." Citing *State* v. *Ward,* 48 Ark. 36, 2 S. W. 191, 3 Am. St. Rep. 213; *Rinehart* v. *State,* 160 Ark. 129, 254 S. W. 351; *Jackson* v. *State,* 160 Ark. 198, 254 S. W. 531

The second ground urged for reversal of this case is that the evidence is not sufficient to sustain the verdict. After a careful consideration of the evidence we must overrule appellant on this point. However, we deem it proper to say that there is no evidence in the record sufficient to support a conviction on the charge in connection with Joe Morgan or Sam Wiggins, but as to the charge in connection with Rufus Williams and Robert Haymon there is a dispute in the testimony, and, while the testimony is quite meager, we think it was sufficient to go to the jury. Robert Haymon testified that he worked for Mr. Spears at his house and at the farm; that Mr. Spears told him that he wanted him to work for him at the house and the farm, and would allow him straight time at the mill, and that he drew his money at the mill. The time-book of appellant showed that he worked for the mill regularly through January to the last of July, in 1925, and the witness testified that he did not think he worked at

the mill in 1925, but, on cross-examination, he may have virtually destroyed the effect of his testimony, but this was a question for the jury.

Andrew Holman testified that he, at the direction of the appellant, cashed a number of identification slips for Rufus Williams, given to him by the appellant, and took the money back to the appellant. Appellant denies this. The same witness testified that appellant wanted him to swear that he knew Rufus Williams, and that he boarded at the witness' house; said appellant told him he would give him $50 if he would say that, and that, if the witness did not swear that he gave the money that he got on the identity slips to Rufus Williams, appellant would blow his head off. This conversation is not denied by appellant.

Another witness, S. R. Nolan, was permitted to testify, over appellant's objection, that he had worked for appellant and had received his pay from the mill. This evidence was permitted by the court, for the reason that it tended to show a scheme on the part of the appellant to defraud the lumber company in this manner, and it was competent for this purpose.

The only other evidence in the record of any substantial value against appellant was his own letter written to Mr. A. B. Cook, manager for the lumber company, after he had been discharged, which letter reads as follows:

"Malvern, Arkansas.

"Mr. A. B. Cook,
Malvern, Arkansas.

"Dear Mr. Cook: I am urging and begging on behalf of my family that we settle the matter that we discussed yesterday without any process of law. There never was a little woman who has worked harder in order that we might have a happy home, and we are working together to give all of our six children an education, and if this matter is carried into court we will be ruined and our hopes will be destroyed.

"As I stated yesterday, I have no money. I owe $1,100 on this place and $1,000 on the property in town and $3,300 on the bottom farm. I have placed that property in town on the market, but as yet have had no bids on it. I will be willing to give this company a second mortgage on this place, or the one in town preferably, and when it sells you will get your part.

"Mr. Cook, I know you feel that I have not acted square, and perhaps feel that I should be prosecuted, but please let this be the one time that you let mercy for a little woman and six children have the right-of-way in your decision in this matter, and I assure you that I will always be a friend of the company's as I am now.

"You have in your power to prosecute or prevent me from getting another place of employment, but I sincerely hope in all earnestness that you will at this time show mercy and be willing to settle this out of court.

"Yours very truly,

"Grover C. Spears."

This evidence was sufficient to take the case to the jury, under the rule of this court that, where there is any substantial evidence tending to show the guilt of the accused, it is a question for the jury and not the court to determine the matter of his guilt.

Appellant urges, under this assignment also, that the indictment charges that, as a result of the false pretenses alleged, he caused the lumber company to pay to appellant more than $300 "lawful money of the United States," and that there is no proof that the money so paid was of the character alleged. While it is true that there is no proof of the kind of money, whether gold, silver or paper money, and while there are some decisions of this court apparently sustaining appellant's contention (*Value* v. *State,* 84 Ark. 286, 105 S. W. 361, 13 Ann. Cas. 308; *Marshall* v. *State,* 74 Ark. 415, 75 S. W. 584; *Silvie* v. *State,* 117 Ark. 108, 173 S. W. 857, yet the trend and substantial holding of the later decisions of this court are against appellant's contention. *Cook* v. *State,* 130 Ark. 90, 196 S. W. 922, where the court defines the word

"dollars" as the money unit of the United States, and further states that "if any word has a settled meaning at law and in the courts, it is this. It can only mean the legal currency of the United States, not dollars invested in lands or stocks,"˙and the charge in this indictment is that the lumber company was defrauded out of more than $300. To the same general effect see *Kent* v. *State,* 143 Ark. 439, 220 S. W. 814; *Hall* v. *State,* 161 Ark. 453, 257 S. W. 61.

The next assignment of error relates to the admission of the testimony of S. R. Nolan, which has already been mentioned. It was objected to on the ground that he was not charged in the indictment with having defrauded the company through Nolan, but, as we have already stated, it was admitted on the theory that it tended to show a general scheme on the part of appellant to defraud the lumber company, or show design, intention and knowledge, and was admissible for this purpose. *Norris* v. *State,* 170 Ark. 484, 280 S. W. 398.

It is finally insisted that the court erred in giving and in refusing to give certain instructions. We have examined these assignments carefully, and have reached the conclusion that the court fully and fairly submitted this case to the jury on correct and proper instructions. No useful purpose could be served by setting them out and arguing them, as it would unduly extend this opinion.

We find no error, and the judgment is accordingly affirmed.