SANDERS *v.* BAKER.

4-9233                               231 S. W. 2d 106

Opinion delivered June 26, 1950.

*Chas. F. Cole*, for appellant.

*R. W. Tucker*, for appellee.

MINOR W. MILLWEE, Justice. This is a suit by Ernest Sanders, Jr. to quiet title to a strip of land 50 feet wide and 350 feet long on the west side of Frl. Block 22 of Maxfield's Second Eastern Addition to the City of Batesville, Arkansas, and to cancel a deed of said lands from Alph Shirley and wife to appellee, Leona Baker. Appellant asserted ownership of the disputed strip by adverse possession since November 3, 1938, when he purchased four lots in Frl. Block 22 adjoining the land in controversy on the east from Claude Hill and wife. All of Frl. Block 22 was formerly owned by Theodore Maxfield, who conveyed the four lots now owned by appellant to the latter's predecessor in title about 1905. On December 12, 1947, the executors of the Maxfield estate conveyed lots 1 and 6 in Frl. Block 22 to Alph Shirley and wife who conveyed to appellee on April 2, 1948.

After a hearing the chancellor made the following findings: "The Court in this case is of the opinion that Mrs. Baker's title to Lots One and Six of Fractional Block 22, Maxfield's Second Eastern Addition, or the strip of ground 50 feet by 350 feet lying on the east side of 23rd Street is good as against the claimant Ernest Sanders, under the facts and circumstances and for reasons as follows:

"The Court is of the opinion that Mr. Sanders under the evidence has almost a perfect case of adverse possession except for one element which is the element of intent, and the facts and evidence touching on the acts of intent, as the Court sees it, are about as follows.

"First, in favor of Mr. Sanders, the evidence shows that he built a house on his own land adjacent to the

strip and during the period of occupancy had some truck patches on the strip in question, and at one time rented a portion of the strip to another party. That on another occasion when a couple of neighbors were out talking to him he told them that he owned all the land. The evidence also shows that at the time Mr. Sanders bought it and moved on the land and during the whole period of occupancy the entire piece of land was under fence and inclosed.

"On the other hand, the following, in the opinion of the Court, indicate that perhaps Mr. Sanders did not have the intent to hold the land as his own and adversely. In the first place, the Court notes that the fence was not erected by Mr. Sanders but was already there when he moved on the ground. In the second place, the block of ground in question which is Block 22 of Maxfield's Second Eastern Addition as shown on the recorded plat is not lotted, but the plat shows that other blocks adjacent to this block were lotted and in such a manner that Lots One and Six would have comprised the strip of ground in question had Block 22 been lotted. In the third place, the deed that Mr. Sanders received from Mr. Hill to the land described his land as Lots Two, Three, Four and Five of said Block 22, which may have been some indication to Mr. Sanders and others that it was not the intention of the grantors to convey him the entire block of ground since Lots One and Six were not mentioned. All of the above facts and circumstances are to be considered with the following: In the fourth place, after the period of occupancy, one Shirley who had obtained a deed from Maxfields to Lots One and Six entered upon the land and erected a fence around the ground in question or rather on the east side of the disputed strip; that he did this apparently in the presence of and close to the home of Mr. Sanders, and it appears that Mr. Sanders at the time and at no immediate time thereafter made objection, but, on the other hand, Mr. Sanders went to Mr. Shirley, the grantor, later on to Mrs. Baker, and made an effort to purchase from him Lots One and Six, and at no time made any claim that he owned Lots One and Six. And in the next place, and to the Court's mind the strong-

est circumstance was that later Mr. Sanders went to the defendant, Mrs. Baker, who had purchased from Mr. Shirley, and attempted to buy the lots from her; that according to the undisputed testimony of Mrs. Baker and without Mrs. Baker requesting it, Mr. Sanders went to her seven or eight times in an effort to buy the two lots, and during these conversations trades were discussed back and forth, and prices were discussed indicating trading on the face value of the lots, and at no time did Mr. Sanders indicate to her that he was claiming any interest or had ever claimed any interest in the lots in question. And the Court is of the opinion that during the period of occupancy that it was not the intent of Mr. Sanders to claim title to this strip of land." A decree was accordingly entered dismissing appellant's complaint and quieting title to the land in controversy in appellee.

For reversal it is earnestly insisted that the chancellor's conclusion that appellant did not intend to hold the lands adversely is against the preponderance of the evidence. It is well settled that the intention to hold adversely is an indispensable element of adverse possession. *Moir* v. *Bailey,* 146 Ark. 347, 225 S. W. 618. Appellant argues that no weight can be attached to his conversations and negotiations with appellee and others in which he sought to purchase the disputed tract and made no contention at the time that he was claiming title thereto. It is insisted that when these negotiations took place appellant's title by adverse possession had already vested and could not be divested by parol abandonment under the rule recognized in *Stroud* v. *Snow,* 186 Ark. 550, 54 S. W. 2d 693, and *Hart* v. *Sternberg,* 205 Ark. 929, 171 S. W. 2d 475. In *Deweese* v. *Logue,* 208 Ark. 79, 185 S. W. 2d 85, we said: "It is true, admissions and declarations made by claimant after a title has been acquired by adverse possession cannot operate to defeat it, but they are nevertheless admissible to show the character of possession prior to the lapse of time necessary to give title and bear on the question whether claimant's possession was in fact hostile. See 2 C. J. 272; *Hutt* v. *Smith,* 118 Ark. 10, 175 S. W. 399. In the case of *Russell*

v. *Webb,* 96 Ark. 190, 131 S. W. 456, this court upon rehearing said: 'Any act or conversation recognizing the claim of the original owner after the seven years' occupancy would tend to show that the possession held during the statutory period was not adverse. Though such testimony is not admissible for the purpose of divesting title out of the adverse occupant and revesting it in the original owner, it is perfectly admissible for the purpose of showing that the possession of the occupant was not adverse, and that the occupant did not acquire title by the possession, which was only permissive. *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444; *Hudson* v. *Stilwell,* 80 Ark. 575, 98 S. W. 356.' '' See, also, *Sloan* v. *Ayers,* 209 Ark. 119, 189 S. W. 2d 653; *Lowe* v. *Cox,* 210 Ark. 169, 194 S. W. 2d 892.

Appellant did not specifically deny the conversations and negotiations with appellee and others relative to his offer to purchase the property nor did he assert that such offers were made for the purpose of buying his peace and avoiding litigation. As reflected by the chancellor's findings, the question whether appellant occupied the property in dispute with the intent to claim adversely is sharply disputed. In view of the chancellor's favored position in passing on the credibility of the various witnesses, we cannot say that his determination of this factual issue is against the preponderance of the evidence.

Appellant also contends that the deed to appellee from Alph Shirley and wife is defective in that it describes lands which cannot be located by reference to the official plat of Block 22. The recorded plat shows Frl. Block 22 to be 350 feet long running north and south along the east line of 23rd St. between Boswell and Porter Streets. The deed to appellee contains the following description: ''Lots One (1) and Six (6) in Frl. Block Twenty-two (22) of Maxfield's Second Eastern Addition to the City of Batesville, Arkansas. Said Lots are 50 feet on Boswell and 50 feet on Porter Street, and 350 feet on line of 23rd Street, and are on intersection of Boswell and 23rd Streets and Porter and 23rd Streets.'' We have said that the office of the description

in a deed is not to identify the land, but to furnish the means of identification. *American Investigation Co.* v. *Gleason,* 181 Ark. 739, 28 S. W. 2d 70. It is true that Frl. Block 22 is not subdivided into lots on the official plat but, as pointed out by the chancellor, other blocks in the addition are subdivided in such manner that Lots 1 and 6 would have comprised the property in controversy had Frl. Block 22 been subdivided. The property in controversy may readily be identified by reference to the official plat from the description used in the deed to appellee.

Moreover, we have repeatedly held that in suits to quiet title the plaintiff must succeed, if at all, as in actions of ejectment, upon the strength of his own title, and cannot rely upon the weakness of his adversary's title. *Bullock* v. *Duerson,* 95 Ark. 445, 129 S. W. 1083; *Chavis* v. *Henry,* 205 Ark. 163, 168 S. W. 2d 610. Appellant had no record title to the land in controversy. Since we have concluded that the chancellor's finding on the issue of adverse possession is not against the preponderance of the testimony, it follows that the decree must be affirmed.