GRISSOM *v.* BUNCH.

5-1148                                                     301 S. W. 2d 462

Opinion delivered April 15, 1957.

[Rehearing denied May 20, 1957]

*C. M. Buck* and *Claude F. Cooper,* for appellant.

*Frank C. Douglas* and *Oscar Fendler,* for appellee.

Ed. F. McFADDIN, Associate Justice. Appellee, Mrs. Mattie Moody Bunch, brought this suit seeking to be declared the sole owner of certain lands in Mississippi County. She claimed that her mother, Mrs. Florence Moody Crawford, held the title as a constructive trustee for Mattie Moody Bunch. The defendants—appellants here—were the beneficiaries under the will of Mrs. Florence Moody Crawford. From a decree, declaring and enforcing the trust as prayed by the plaintiff, there is this appeal.

Matt Moody, father of Mattie Moody Bunch, died in 1906, the owner of an undivided one-third interest in the entire NW¼ of Section 1. He was survived by his wife, Florence. His child, Mattie (the appellee), was born a few months after his death. Mrs. Florence Moody married another man named Moody and had children by him. Later, when her second husband died, she married Mr. Crawford, and as Florence Moody Crawford made her will in February, 1952. She died on May 1, 1954, devising the lands here involved to certain grandchildren, who were the defendants below and are the appellants here.

The aforesaid Matt Moody owned an undivided one-third interest in the entire NW¼ of Section 1. Mattie Moody Bunch[1] was born in 1907 and was the sole heir of Matt Moody. The owners of the other two-thirds interest in the NW¼ of Section 1 (they being relatives of Mattie Moody Bunch) brought suit for partition in 1915; and the North third of the NW¼ of Section 1 was set apart to Mattie Moody Bunch as her property. This was approximately 53-1/3 acres. She was then about eight years of age and continued to live on her land with her mother and stepfather. They failed to pay the taxes and assessments, and were about to lose the land, when in 1925 they persuaded Mattie Moody Bunch to execute a mortgage to the Oklahoma Farm Mortgage Association to obtain money with which to pay the past due taxes and assessments. This mortgage was dated May 18, 1925, and Mattie Moody Bunch was then 18 years of age.

On June 17, 1925 Mattie Moody Bunch executed the first deed here involved, purporting to convey to her mother, the East half of the 53-1/3 acres owned by Mattie Moody Bunch. This deed will be discussed in Topic II, *infra*. On May 20, 1937, Mattie Moody Bunch executed to her mother a second deed, which purported to be a quitclaim deed to the entire North third of the NW ¼ of Section 1, and this deed will also be discussed in Topic II, *infra*. Mrs. Florence Moody Crawford continued to live on the land until her death on May 1, 1954. Shortly thereafter, Mattie Moody Bunch filed this suit against the persons to whom Mrs. Florence Moody Crawford had devised the lands.

I. *Appellee's Theory For Recovery.* Appellee claimed below and insists here that, even though she executed the two deeds to her mother, nevertheless the mother, Mrs. Florence Moody Crawford, became a constructive trustee for the benefit of the appellee, and that the court of equity should enforce the trust in this case just as was done in such cases as *Armstrong* v. *Armstrong,* 181 Ark. 597, 27 S. W. 2d 88; *Ladd* v. *Bones,* 213

---

[1] She was born Mattie Moody. She first married Mr. Reece, and later married Mr. Bunch; but for definite identification we will at all times refer to her as "Mattie Moody Bunch".

Ark. 1030, 214 S. W. 2d 353; and *Walker* v. *Biddle,* 225 Ark. 654, 284 S. W. 2d 840. Appellants claim that this case does not come within the holding of the foregoing cases but comes within the holdings in such cases as *Ammonette* v. *Black,* 73 Ark. 310, 83 S. W. 910; *Spradling* v. *Spradling,* 101 Ark. 451, 142 S. W. 848; and *O'Connor* v. *Patton,* 171 Ark. 626, 286 S. W. 822.

The clearest statement of the rule contended for by the appellee is stated in the case of *Bragg* v. *Hartney,* 92 Ark. 55, 121 S. W. 1059, and is there quoted from Pomeroy on "Equity Jurisprudence":[2]

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property, either in the hands of the original wrongdoer or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes property relieved from the trust. The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto,* are practically without limit. The principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrong-doer."

The foregoing rule is the basis of constructive trusts; and, with the rule thus recognized, we proceed to consider the evidence.

---

[2] The opinion cites Vol. 3, page 2033 of Pomeroy. That was the then current edition in 1909. The present edition of Pomeroy is the Fifth Edition by Symons; and this quotation is found therein in § 1053.

II. *The Two Instruments Appellee Executed.* Appellee admits executing the deed in 1925 and also the deed in 1937. As regards the 1925 deed, she points out that in that year she was only eighteen years of age and living with her mother and stepfather and was about to marry; that her mother (Mrs. Florence Moody Crawford) insisted that the mother's dower had never been settled; that the mother claimed that she was entitled to one-half of the land for life as dower; and that the 1925 deed was represented to the appellee as conveying to the mother one-half of the land *for life* as dower. When we consider the age of Mattie Moody Bunch in 1925 and the influence of her mother and stepfather over her, the case at bar is strikingly similar in facts to that of *Gillespie* v. *Holland,* 40 Ark. 28.

As regards the 1937 deed, Mattie Moody Bunch testified that her mother and stepfather had failed to pay the taxes and assessments and were again about to lose the land just as had been the situation prior to 1925; and that the mother and stepfather told her that if she would sign the 1937 deed, Florence Moody Crawford would redeem the land and pay up all back taxes for the benefit of Mattie Moody Bunch, who would receive rents from time to time and would have the full title after the death of Florence Moody Crawford. The foregoing testimony bears a striking similarity to that contained in the cases of *Armstrong* v. *Armstrong, supra; Ladd* v. *Bones, supra;* and *Walker* v. *Biddle, supra.* So Mattie Moody Bunch's testimony makes a case for the application of the doctrine of constructive trusts, if her testimony is supported by the quantum of evidence required in such cases.

III. *The Quantum Of Evidence.* Our cases hold that the evidence to establish a constructive trust must be clear, cogent, and convincing. See *Bray* v. *Timms,* 162 Ark. 247, 258 S. W. 338; and *Ladd* v. *Bones,* 213 Ark. 1030, 214 S. W. 2d 353. Appellants most seriously insist that appellee failed to offer such quantum of evidence; but a careful review of the record convinces us that the appellants are in error.

Mr. Crawford, husband of Mrs. Florence Moody Crawford and stepfather of Mattie Moody Bunch, testified that Mrs. Crawford always said that the land belonged to Mattie Moody Bunch and would go to her absolutely on the death of Mrs. Florence Moody Crawford. Mrs. Janie Moody, sister of Mrs. Florence Moody Crawford, testified that Mrs. Crawford repeatedly told her that the property belonged to Mattie Moody Bunch and would so revert on the death of Florence Moody Crawford. One disinterested witness was Mr. Sacrider. He said that Mrs. Florence Moody Crawford always referred to the land as being ''Mattie's place'', and that shortly before 1954 such statements were reiterated by Mrs. Florence Moody Crawford.

A number of other witnesses testified as to similar and stronger statements made all along by Mrs. Florence Moody Crawford. It was shown that in 1938 and in other years up to 1945 Mrs. Florence Moody Crawford paid Mattie Moody Bunch rent money from the place; and that after 1945 Mattie Moody Bunch was in sufficient financial condition where she let her mother keep the rent money. Furthermore, it was shown that when people would go to Mrs. Florence Moody Crawford to try to buy a building site on the land, she would tell them that she could not sell them anything more than a life interest because the land belonged to Mattie Moody Bunch. At one time Mrs. Crawford wanted to sell a man a 5-acre tract and Mattie Moody Bunch told her that she couldn't do it, so the sale was never made. It was only in two instances—both agreed to by Mattie Moody Bunch—that Mrs. Crawford actually sold one-acre parcels of the land.[3] All of this evidence is overwhelming to the effect that Florence Moody Crawford always recognized that she was holding the title to this property only for her lifetime and that on her death it would go back to Mattie Moody Bunch.

The appellants' witnesses attempted to contradict the appellee's testimony as to facts surrounding the execution of the 1925 deed and the 1937 deed; but the tes-

---

[3] The titles of these persons are not questioned in this case.

timony of appellants' witnesses was largely contradicted and overcome by the testimony of other witnesses and by certain physical facts.

IV. *Other Points Urged By Appellants.* Appellants make three other contentions, all of which we find to be without merit.

In the first place, appellants insist that the various witnesses should not have been allowed to testify as to the statements made to them by Mrs. Florence Moody Crawford concerning the land and title. Appellants say that such statements were inadmissible under the case of *Waldroop* v. *Ruddell,* 96 Ark. 171, 131 S. W. 670. The holding in that case was that declarations of a decedent —to the effect that she owned the land—were not admissible because they were *self serving.* But, in the case at bar, the statements made by Mrs. Florence Moody Crawford and admitted in evidence were to the effect that she was *not* the fee simple owner. Therefore, the declarations were *against interest* and were admissible under our holdings in *Smith* v. *Clark,* 219 Ark. 751, 244 S. W. 2d 776; *Sanders* v. *Baker,* 217 Ark. 521, 231 S. W. 2d 106; and *Norden* v. *Martin,* 202 Ark. 180, 149 S. W. 2d 550. In the last cited case we quoted from *Russell* v. *Webb,* 96 Ark. 190, 131 S. W. 456:

"It is well settled that declarations and admissions of one in possession of land, relating to the title thereof and adverse to his interest, are admissible against him; and declarations and admissions of a person made while in possession, adverse to his title are admissible against his successors in interest and all who claim under him."

Secondly, appellants insist that the Statute of Frauds prevents the maintaining of this action and prevents the admission of any oral testimony as to the trust. Appellants claim that § 38-106 Ark. Stats. is applicable. We find appellants' contention in this regard to be without merit. We have repeatedly held that the statute does not apply to a constructive trust. See *Armstrong* v. *Armstrong,* 181 Ark. 597, 27 S. W. 2d 88; and *Walker* v. *Biddle,* 225 Ark. 654, 284 S. W. 2d 840.

Finally, appellants plead the five-year Statute of Limitations (§ 37-213 Ark. Stats.) and say that the deeds were executed by Mattie Moody Bunch in 1925 and 1937 respectively, and this suit was not filed until 1954. This contention is without merit. The trust was not repudiated by Mrs. Florence Moody Crawford until her will was probated after her death in 1954; and limitations commenced at that time. See *Walker* v. *Biddle,* 225 Ark. 654, 284 S. W. 2d 840.

We conclude that the trust was proved by the *quantum* of evidence required and, accordingly, the decree is in all things affirmed.