Herbert Hoover MALONE, et al.*v.* Hugh A. HINES, Sr.

CA 91-24                                                822 S.W.2d 394

Court of Appeals of Arkansas
Division I
Opinion delivered January 8, 1992

*William David Mullen*, for appellant Ray Dickson.

*Melinda French*, for appellants.

*Harry L. Ponder*, for appellee.

JUDITH ROGERS, Judge. This is the second appeal of this lawsuit, which grew out of a dispute between appellee, Hugh A. Hines, and appellant, Herbert Hoover Malone, who had entered into a contract together concerning the operation of a cattle farm. On April 12, 1989, the chancellor entered a decree finding that a constructive trust for the benefit of Hines had arisen in certain cattle, and the proceeds from the sale of that cattle, as against appellants Malone, Ray Dickson, Teresa French, Steven French and Lisa Malone. An appeal was taken from this decree, but in a unpublished opinion, *Malone v. Hines*, CA89-315 (op. delivered March 21, 1990), we dismissed the appeal for the lack of an appealable order pursuant to Ark. R. App. P. 2 and Ark. R. Civ. P. 54(b), as the chancellor had not disposed of all of the claims between the parties. In the decree, the chancellor had held in abeyance for the appointment of a special master the settling of accounts between Hines and Malone, as to whether Hines owed money to Malone upon the termination of their contractual relationship.

In the subsequent proceedings below, rather than appointing a master, the chancellor held a hearing on the issue of accounting. By order of October 12, 1990, the chancellor ruled that Hines was not indebted to Malone. This appeal followed, and all issues are now before this court for decision.

In this appeal, appellant Ray Dickson has filed a separate brief, while appellants Malone, Teresa French, Steven French and Lisa Malone have joined together in the filing of a brief. For reversal, Dickson argues that the chancellor erred in his application of a constructive trust against him absent a finding of unjust enrichment; that the chancellor erred in denying him the protection of an innocent purchaser; and that the chancellor erred in his

interpretation of the law concerning constructive trusts. With respect to the order of October 12, 1990, Malone argues that the chancellor erred in finding that Hines was not indebted to him. Appellants Teresa French, Steven French and Lisa Malone contend that the chancellor erred in applying a constructive trust to monies paid to them by Malone. After due consideration of the various issues raised, we affirm the decisions of the chancellor.

The following facts are not in dispute. In 1974, Hugh A. Hines, a resident of Memphis, Tennessee, purchased a ninety-acre farm in Lawrence County. In June of 1987, Hines entered into a contract with Malone for the purpose of raising cattle and other farm products on this farm. According to the contract, Malone was to manage the farm and was to be paid $100 a week for his services. In addition, Malone was to receive one-half of the net proceeds generated from the sale of livestock. In September of 1987, Malone sold half of the herd of cattle for $18,094.50, and a dispute between them arose over Malone's share of the proceeds. On September 23rd, Malone sold the remaining fifty head of cattle to appellant Ray Dickson for $16,500.

When Hines learned of the sale a few days later, he immediately filed suit in the chancery court against Malone, praying for the imposition of a constructive trust upon the proceeds of the sale. In his complaint, Hines alleged that he was the owner of the cattle, and that by contract Malone was hired by him as an employee to manage his farm. The recent dispute between them was acknowledged in the complaint, and it was alleged that the parties had reached an agreement with the aid of legal counsel that neither party would sell the remaining herd pending the resolution of the disagreement. It was also alleged that Malone was authorized, however, to sell as many as fifteen head of cattle, provided the proceeds be placed in escrow with their attorneys. Hines further alleged in the complaint that Malone was insolvent and that, if Malone were to dispose of the proceeds from the sale, he would be irreparably harmed and left without an adequate remedy at law; therefore, Hines requested that Malone be restrained from disposing of the proceeds and asked that the funds be placed into the registry of the court.

On October 5, 1987, a hearing was held on Hines' request for a restraining order. The hearing was apparently discontinued

without the issuance of an injunction upon Malone's testimony that the proceeds had been dispersed to other persons. Thereafter, Hines amended his complaint to include Dickson as a defendant, as well as the other appellants, who were alleged to have received from Malone the proceeds from the sale of the cattle to Dickson.

In his decree of April 12, 1989, the chancellor found that Malone was Hines' employee, who was hired to manage the farm under the direction and orders of Hines, and that Malone's relationship to Hines was that of fiduciary. The chancellor also found that, after the initial dispute over Hines' sale of cattle, they had agreed not to sell the remaining cattle, and that Malone breached this agreement when he sold the cattle to Dickson, who was found not to be an innocent purchaser. Additionally, the chancellor found that on September 24, 1987, Malone had converted the $16,500 check from Dickson into a $15,500 cashier's check and $1,000 in cash, and that the cashier's check had not been cashed as of the time of the October 5th hearing, and was thus available for distribution, contrary to Malone's testimony at that hearing. Upon these findings, the chancellor ruled that the cattle and proceeds were impressed with a constructive trust in favor of Hines. The chancellor also determined that Malone had transferred the proceeds from the Dickson sale in varying amounts to appellants Teresa French, Steven French and Lisa Malone. He thus imposed joint and several liability against Malone and Dickson in the sum of $16,500, as well as the other appellants in the following amounts: Teresa French, $5,000; Steven French, $8,000; and Lisa Malone, $3,500.

We first address an issue which appellants Dickson, Teresa French, Steven French and Lisa Malone have raised in common. These parties contend that the chancellor misapplied the law of constructive trusts with regard to the tracing of the proceeds. Specifically, it is their contention that Hines failed to sufficiently identify the proceeds as found in their hands. We cannot agree.

A constructive trust is an implied trust and unlike an express trust it is not created but arises by the operation of law when equity so demands. *Hall* v. *Superior Federal Bank*, 303 Ark. 125, 794 S.W.2d 611 (1990). We have described the constructive trust as an equitable tool which may be utilized to prevent unjust enrichment. *Horton* v. *Koner*, 12 Ark. App. 38,

671 S.W.2d 235 (1984). It has also been said that wherever the circumstances of a transaction are such that the person who takes the legal estate in property cannot also enjoy the beneficial interest without necessarily violating some established principle of equity, the court will immediately raise a constructive trust, and fashion it upon the conscience of the legal owner, so as to convert him into a trustee for the parties who in equity are entitled to the beneficial enjoyment. *Davidson* v. *Sanders*, 235 Ark. 161, 357 S.W.2d 510 (1962). Moreover, a constructive trust will follow property through all changes in its state or form, so long as such property, its product, or its proceeds are capable of identification. 76 Am. Jur. 2d *Trusts* § 251 (1975). And, a court in equity has jurisdiction to reach the property, either in the hands of the original wrongdoer or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice, acquires a higher right, and takes the property relieved from the trust. *Grissom* v. *Bunch*, 227 Ark. 696, 301 S.W.2d 462 (1957).

At trial, the disposition of the proceeds was established through the testimony of Malone and Teresa French. Malone testified that he exchanged the $16,500 check from Dickson for a cashier's check of $15,500. He said that he retained $1,000 in cash and gave the cashier's check to his niece, appellant Teresa French, who is a lawyer. Teresa testified that she gave appellant Steven French, her brother, $8,000 in cash from a money box in her office in order to satisfy a debt she said Malone owed Steven. She stated, however, that Malone had failed to endorse the cashier's check. Malone retrieved the check and exchanged it at a different bank for a $10,000 cashier's check and the remainder in cash. Malone testified that he gave Teresa the cashier's check and $3,000 in cash, which left him with a total of $3,500 in cash. He said that he gave this amount to his daughter, appellant Lisa Malone, as a gift. Teresa did not cash the $10,000 cashier's check until January 25, 1988, and she testified that she put the money in her savings account. She further testified that Malone owed her mother, Nadine French, $5,000, and that she allowed her mother to charge $5,000 on her Visa credit card to extinguish that debt. Neither Lisa Malone nor Steven French appeared at trial to testify.

Dickson testified that, as of the time of trial, he still had ten head of the cattle sold to him by Malone. He said that he sold the

rest for $12,868.

■■ We think appellants are mistaken in their view of the law with respect to the imposition of a constructive trust. The degree of identification of trust funds depends on the circumstances of each case, and is far less in actions between the *cestui* and trustee than what is required where the rights of third parties are involved. *See Boroughs* v. *Whitley*, 363 P.2d 150 (Okla. 1961); *Rivero* v. *Thomas*, 194 P.2d 533 (Dist. Ct. App. 1948). We agree with the court's statement in *Rivero v. Thomas, supra*, that "No equitable rule approves of a trustee's admission of the receipt of money and denial of liability because the trustor does not know where each penny was placed." *Rivero* v. *Thomas*, 194 P.2d at 541. *See also* 90 C.J.S. *Trusts* § 346 (1955). We find no error in the chancellor's use of his considerable equitable powers to hold these appellants accountable for the receipt of trust property to prevent them from being unjustly enriched at the expense of Hines.

■ We now turn to the remaining two issues raised by Dickson. In his brief, Dickson first contends that the chancellor erred in applying a constructive trust as to him absent a finding of unjust enrichment. We take his argument to mean that he was not *unjustly* enriched because it was not shown that he was involved in any wrongdoing in purchasing the cattle. This assertion, however, ignores the principle that where a sale of trust property is unauthorized and a breach of trust, the trust follows such property into the hands of a transferee, unless the transferee is protected as a *bona fide* purchaser. 76 Am. Jur. 2d *Trusts* § 255 (1975). *See also Grissom* v. *Bunch, supra*. Furthermore, we have recognized that unjust enrichment does not require the performance of any wrongful act by the one enriched. *Orsini* v. *Commercial Nat'l Bank*, 6 Ark. App. 166, 639 S.W.2d 516 (1982). We find no merit in this argument.

Dickson next argues that the chancellor erred in not finding that he was an innocent purchaser for value. On this issue, Dickson testified that when he purchased the cattle, Malone told him that he and Hines were involved in a dispute. Dickson said that this information made him "uneasy," and caused him to consult an attorney before making the purchase. He also stated that he had never before sought legal advice prior to purchasing

cattle.

■■ The supreme court in *Gentry* v. *Alley*, 228 Ark. 236, 306 S.W.2d 691 (1957), held that one is not an innocent purchaser if he fails to inquire when he had notice of circumstances that ought to have put a prudent business man upon inquiry. The question of whether or not Dickson was an innocent purchaser for value was essentially one of fact, *Hollis* v. *Chamberlin*, 243 Ark. 201, 419 S.W.2d 116 (1967), and we do not reverse a chancellor's findings of fact unless the findings are clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a). All Dickson need have done was to contact Hines about his concerns. He did not do so, and we cannot say that the chancellor's finding on this point is clearly erroneous.

Proceeding to the remaining appellants' arguments, Malone contends that the chancellor erred in not finding that Hines was indebted to him. As part of this argument, he also contends that he and Hines were engaged in a partnership. We will address the latter issue first.

■■ A partnership has been defined as a voluntary contract between two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a proportional sharing of the profits and losses between them. *Wymer* v. *Dedman*, 233 Ark. 854, 350 S.W.2d 169 (1961). Whether, in fact a partnership exists depends on the intention of the parties, which is to be discovered from the contract into which they enter, construed in the light of all the surrounding facts and circumstances. *See Morrow* v. *McCaa Chevrolet Co.*, 231 Ark. 497, 330 S.W.2d 722 (1960). In determining whether the parties were engaged in a partnership, in a case closely resembling the one at bar, the court in *Kent* v. *State*, 143 Ark. 439, 220 S.W. 814 (1920), said:

> If it was the understanding between Jones and appellant that Jones was to contribute his money and appellant his services as capital in a joint enterprise where both were to share in the profits and losses, then this contract would constitute a partnership. But, on the contrary, if the contract was that Jones should furnish the capital and pay all the expenses and appellant was employed to work for

Jones with the understanding that he was to receive as compensation for his services one-half the net profits, having no community interest, then appellant would be an employee for hire and not a partner.

*Id.* at 443-44, 220 S.W. at 815. (Citation omitted.)

Here, it is not disputed that Hines owned the land, that he purchased the cattle, or that he paid the expenses of the farming operation. According to the contract, Malone was charged with the day to day running of the farm, for which he was to be paid a weekly sum and was entitled to half of the net proceeds from the sale of cattle. Based on the above-cited principles and the record before us, we cannot say that the chancellor's finding that Malone was Hines' employee is clearly erroneous.

In his order of October 12, 1990, the chancellor found that the farm operated at a loss, and thus concluded that Malone was not owed any monies under the contract. On appeal, Malone argues that the chancellor erred in giving credence to certain expenses claimed by Hines, arguing that Hines' calculations were filled with errors, and that some of the expenses were not properly attributable to the farming operation. He also argues that the chancellor erred in considering the cost of acquiring the permanent stock as an expense, and that the chancellor should have considered evidence only from 1987 in arriving at his decision.

Cases on appeal from the chancery court are tried *de novo* on the record, but this court will not reverse the findings of the chancellor unless his findings are clearly erroneous, giving due deference to the chancellor's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Jones v. Jones*, 29 Ark. App. 133, 777 S.W.2d 873 (1989).

In making his ruling, the chancellor commented that, even if he withdrew from his calculations the expenses challenged by Malone, the result would still be that the farm operated at a loss. The chancellor also credited the testimony of Hines' accountant, who stated that the cost of permanent stock is treated as an expense according to accepted accounting procedures. Giving due regard to the chancellor in these matters, we cannot say that

the chancellor's finding is in error.

We note that appellants, Teresa and Steven French, and Lisa Malone, have raised additional issues in which they argue that Hines should have been denied relief based on the equitable doctrine of unclean hands, and that they were innocent purchasers. Our examination of the record reveals, however, that these parties did not raise these issues below; therefore, we will not address them. *Helm* v. *Mid-America Industries, Inc.*, 305 Ark. 12, 804 S.W.2d 727 (1991).

For the reasons discussed herein, we affirm.

Affirmed.

COOPER and JENNINGS, JJ., agree.